UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

RONNIE WARD, ET AL.                    CIVIL ACTION NO. 3:21-cv-01629

VERSUS                                 JUDGE TERRY A. DOUGHTY

CROSS KEYS BANK, ET AL.                MAG. JUDGE KAYLA D. MCCLUSKY

REASONS FOR DECISION

Pending here is an Appeal from the Bankruptcy Court filed by Ronnie Ward and Sharon

Ward (collectively "Appellants") [Doc. No. 1].  Appellants seek relief from a judgment entered

June 7, 2021 by the United States Bankruptcy Court for the Western District of Louisiana, Monroe

Division [Doc. No. 1-1].

Appellees Ellis Blount ("Blount"), Cross Keys Bank ("Cross Keys"), and Caldwell Bank

& Trust Company ("Caldwell Bank") oppose the appeal [Doc. Nos. 11, 12, and 14].

I.      BACKGROUND

Appellant Ronnie Ward was a principal in several automobile-related businesses that had

substantial loans from Cross Keys, including Karcredit, LLC ("Karcredit"), in which he owned a

75% interest.

On May 22, 2019, Cross Keys filed a Petition in the Fourth Judicial District Court,

Ouachita Parish, Louisiana, No. 19-1665 (the "State Court Action"), against Karcredit, Ronnie

Ward, and Sharon Ward. Cross Keys sought judgment against the defendants, in solido, for

amounts due under a promissory note ("the Note") dated March 19, 2012, executed by Karcredit

in the principal amount of $3,197,829.42, plus interest, late fees, attorneys' fees, expenses, and

other amounts asserted to be due under the Note [Doc. No. 2-4, p. 12 *et seq.*]. Cross Keys alleged

that the Wards personally guaranteed the amounts due under the Note pursuant to written guaranty

agreements that each of them signed. Cross Keys also sought a declaratory judgment recognizing and maintaining what it asserted were valid, effective, and first-ranking security interests in certain collateral, specifically 3,175 shares of stock in Homeland Bancshares, Inc. ("Homeland") owned by Ronnie Ward, and a $3,000,000 term life insurance policy issued by Transamerica Life Insurance Company on the life of Ronnie Ward.  [*Id.*].

Over the next year, various responsive pleadings, amended pleadings, reconventional demands, interventions, and third-party demands were filed in the State Court Action.  The attorney who represented the Wards and Karcredit is the same attorney who has represented Appellants throughout these proceedings.

Pertinent here are the following pleadings. The Wards and Karcredit filed a joint answer to the Original Petition on June 17, 2019, which included a reconventional demand against Cross Keys for damages arising out of the alleged mishandling of a loan to Car King, LLC, a non-party to the suit [*Id.*, p. 82 *et. seq.*].

On June 28, 2019, Caldwell Bank & Trust Company ("Caldwell Bank") filed a Motion for Leave to Intervene and an accompanying Verified Petition in Intervention in which it named Ronnie Ward and Cross Keys as defendants. In its Intervention Petition, Caldwell Bank claimed it, not Cross Keys, had a valid security interest in the 3,175 shares of Homeland stock, and, alternatively, alleged a claim for damages against Ronnie Ward. [*Id.*, p. 88 *et. seq.*]

Cross Keys filed a First Amended and Restated Petition on July 19, 2019 against Karcredit, the Wards, and other guarantors of the Note. In its Amended Petition, Cross Keys sought judgment, in solido, against several additional entities and persons who, like the Wards, had signed guaranty agreements to guarantee the amount due under the Note. [*Id.*, p. 112, *et. seq.*].

On August 5, 2019, the Wards, Karcredit, and two of the additional defendants filed a joint answer to the Amended Petition. No affirmative defenses were contained in the joint answer, but it included a reconventional demand by Ronnie Ward, the non-party Car King, and another entity, against Cross Keys that was much the same as the one the Wards asserted in their answer to the Original Petition. [Doc. No. 2-5, p. 29 *et. seq.*].

On October 28, 2019, Ronnie Ward filed an answer to the Caldwell Bank Intervention Petition (the "Oct 28 Ward Pleading"). It included a "Supplement to Reconventional Demand," elaborating upon his reconventional demand against Cross Keys, and not Caldwell Bank – the party that filed the Intervention Petition. It purported to add a third-party demand against Ellis Blount ("Blount"), the private investigator hired by Cross Key's counsel, as a third-party defendant to Ronnie Ward's previous reconventional demand against Cross Keys. The October 28 Ward Pleading also purported to add Sharon Ward as a plaintiff in reconvention. [*Id.*, p. 63 *et. seq.*].

On November 4, 2019, Cross Keys filed an Answer to the Intervention Petition, which included a third-party demand against Homeland for any damages sustained by Cross Keys resulting from any valid security interest in the same Homeland stock in favor of Caldwell Bank that primed or invalidated the Cross Keys security interest in the same stock. [*Id.*, p. 74 *et. seq.*].

On December 13, 2019, Blount filed a Peremptory Exception of No Cause of Action asserting he was inappropriately made the subject of a "third-party demand" in the October 28 Ward Pleading.  [*Id.*, p. 106].

On July 17, 2020, Cross Keys filed an Involuntary Petition Against a Non-Individual with the Bankruptcy Court, Case No. 20-30681, against Karcredit (aka "the Debtor"). Cross Keys asserted its claim in the Involuntary Petition, that under the Note, Karcredit owed it at least

$2,738,031.63 in principal plus accrued but unpaid interest, plus prepetition attorneys' fees, expenses, and other amounts allowed by the Note or any other loan documents.

Later that same day, Cross Keys filed a Notice of Removal in the United States District Court for the Western District of Louisiana ("District Court") to remove the pending State Court Action, No. 19-1665 (aka the "First Adversary"), based on its relation to the Bankruptcy Case. The District Court assigned the removed action case number 20-cv-00900. [Doc. No. 6-7, p. 1 *et. seq.*] On July 17, 2020, a Minute Entry was filed in the removed action indicating it had been referred to the Bankruptcy Court, and thus the First Adversary was instituted in the Bankruptcy Court on July 22, 2020.

On July 23, 2020, the Wards filed a Motion to Withdraw Reference (the "Motion to Withdraw the Reference"). [*Id*., pp. 518-532]. This was referred to the District Court, which denied the Motion to Withdraw the Reference on August 26, 2020. The Court stated in part:

> The first question is whether the removed case "arises under" or is "related to" a bankruptcy proceeding. Certainly, the suit against the Wards relates to the Karcredit bankruptcy proceeding, as the Wards are alleged to have signed a guaranty agreement securing the Karcredit loan and are alleged to have pledged stock in Homeland Bank and a TransAmerican life insurance policy as collateral. Therefore, this matter was properly referred to the Bankruptcy Court for the Western District of Louisiana.

[Dist. Ct. Case No. 20-00942, Doc. No. 11, p. 4].

Karcredit did not file an answer or opposition to the Involuntary Petition within 21 days after service of the summons on it (see Bankruptcy Rules 1011(b) and 1013(a)). Accordingly, on August 11, 2020, the Bankruptcy Court entered an order for relief against Karcredit. [*Id*., p. 11]. Karcredit became a chapter 7 debtor, and a chapter 7 trustee was appointed, namely, John Clifton Conine.

An Order Regarding Procedural Requirements was entered in the First Adversary on July 26, 2020, which reminded all parties to file a statement pursuant to FRBP 9027(e)(3). [Doc. No. 6-7, p.533-535].

The Wards did not file any statement under FRBP 9027(e)(3).

On July 31, 2020, the Wards filed a "Motion to Abstain and Require Plaintiff to Pay Attorney's Fees and Expenses" ("Motion to Abstain") in the First Adversary, requesting the Bankruptcy Court abstain and remand the removed action (the First Adversary) to state court.

Under FRBP 1007(c), the Debtor's Bankruptcy Schedules and Statement of Financial Affairs ("SOFA"), setting forth the assets and liabilities of the Debtor, are due within fourteen days after the entry of the order for relief. The Debtor failed to file its Schedules or SOFA by this deadline or thereafter. [Doc. No. 6-6, pp.1-28].

On August 10, 2020, the Wards filed a "Second Motion to Remand" ("Motion to Remand") in the First Adversary, in which they once again asked the Bankruptcy Court to adjudicate whether to remand the First Adversary.

On August 14, 2020, Cross Keys filed a proof of claim in the Bankruptcy Case. [Doc. No. 6-5, pp.1-79]. The basis of Cross Keys' claim is the Note, and the claim states that the First Adversary was filed to collect the indebtedness owed under the Note from the Debtor and other defendants.

Cross Keys filed oppositions to both the Motion to Abstain and Motion to Remand in the First Adversary. The Wards filed a joint reply to these oppositions. In that reply, the Wards admitted "The claims asserted against Ronnie Ward and Sharon Ward may be 'related to' the Karcredit bankruptcy, but those are not core claims." [Doc. No. 6-8, at p.318, ¶2].

In their Motion to Abstain, the Wards asserted, "Because there is no real estate [sic.] to administered [sic.] in the involuntary bankruptcy proceeding, no amount of delay would be excessive within the meaning of 28 U.S.C. § 1334(c)." [Doc. No. 6-8, p.16]. In its opposition, Cross Keys asserted that the Wards' suggestions to the Bankruptcy Court that Karcredit did not have any assets or that Cross Keys has all the assets were materially false. [*Id*., pp. 95-96]. Cross Keys alleged that within the two months prior it had learned that after Cross Keys had enforced its security interests in certain contracts of the Debtor by providing notice to account debtors to make their payments directly to Cross Keys; that Ronnie Ward, 75% owner of Karcredit, had opened a new account at BancorpSouth Bank in Karcredit's name, and diverted at least $140,241.05 in payments under certain Karcredit contracts, from June 19, 2019, through at least February 8, 2020, that constituted Cross Keys' collateral, to that account. [*Id*. pp.176-188]. Cross Keys asserted that it learned about this diversion shortly before the Bankruptcy Case was filed. According to Cross Keys, the $140,241.05 is still missing and the Trustee is the sole party that has standing to recover those funds for the benefit of the Karcredit bankruptcy estate. Cross Keys asserted that based on these machinations and material omissions from Ronnie Ward\Karcredit in the past, that it is reasonable to assume that there are other assets, including without limitation claims for the return of money that Ronnie Ward diverted from Karcredit and used for purposes other than to pay Karcredit's substantial debt to Cross Keys. These claims to recover the $140,000 plus are now property of the bankruptcy estate. *Id*.

On September 3, 2020, the Bankruptcy Court entered orders in the First Adversary denying the motions to remand and abstain filed by the Wards for the reasons it recited on the record at the conclusion of the September 3, 2020 hearing (the "September Hearing").

The Bankruptcy Court discussed "related to jurisdiction" under 28 U.S.C. § 1334. Mr. Rountree (Appellants' counsel) indicated he would not be filing schedules or statements on behalf of the Debtor. He stated: "I have no intention of appearing on behalf of Karcredit in this [First Adversary and Bankruptcy Case]. It is completely unrepresented. I can't speak for it in any way, shape, or form." [Doc. No. 6-9, p.49].

Mr. Rountree asserted that there would be at most two creditors and little to no assets in the bankruptcy estate of the Debtor. He further asserted that he construed an affidavit attached to Cross Key's opposition to the Motion to Abstain to mean that Cross Keys had seized everything that Karcredit had, including its computers, its files and everything else. The Bankruptcy Court, however, indicated that it did not read the affidavit to make that representation, but instead read Cross Keys' position to be that "the debtor has, and now the estate has, other assets that were not seized and primarily Chapter 5 causes of action that arose upon the entry of the order for relief in this bankruptcy case." [Doc. No. 6-9, p.36, lines 21-25; p.37, lines 1-3].

Counsel for the Wards then stated that he expected that the Trustee eventually would pursue any claim the estate has, "And that could include an avoidance action against Ronnie Ward," or a non-insider "anything like that." [*Id*., p.51, lines 1-6].

Then, the following exchange occurred:

> THE COURT: And you would concede that at the time of the removal that that chain of events is conceivable, not proved, but it is conceivable that the estate has chapter 5 causes of action.

> MR. ROUNTREE [Counsel for the Wards]: I think it's eminently conceivable.

[*Id*., p. 51, lines 7-11].

Counsel for the Wards also agreed with the Bankruptcy Court that, pursuant to 11 U.S.C. § 502(h), any person who pays an avoided transfer pursuant to an action

brought under chapter 5 of title 11 of the Bankruptcy Code ("Chapter 5 Actions") is authorized to file a proof of claim even if the proof of claim deadline has passed, and that proof of claim is deemed to have been filed as of the petition date. [*Id.*, p. 50, lines 5-19]. In other words, this would conceivably result in additional creditors as of the date the Bankruptcy Case was filed. The Bankruptcy Court also made it clear that based on its understanding of the law, that both Chapter 5 Actions and any recovery resulting from them belong exclusively to the estate of the Debtor, and the recovery does not belong to the secured creditor. [*Id.*, p. 48]. Ward's counsel did not dispute this. *Id.*

With regard to jurisdiction, counsel for the Wards admitted there would be related to jurisdiction on the claims between Cross Keys and the Debtor, and on the claims by and between and among Cross Keys and Caldwell Bank. [*Id.*, p. 41, lines 19-25; p.42, lines 1-2].

When asked whether it was his contention that as to all remaining claims that the Bankruptcy Court was without jurisdiction, counsel for the Wards said, "It's very hard to say with any degree of confidence." [*Id.*, p. 42, lines 6-7].

After the Wards' counsel questioned how Cross Keys' claims against Ronnie Ward could have an effect on the bankruptcy estate, the Bankruptcy Court indicated that the standard in the Fifth Circuit is that a claim must merely have a conceivable effect on the estate in order for the Bankruptcy Court to have jurisdiction, and that courts have said that a recovery by a creditor against a guarantor of the debtor's obligations will result in a diminution of the creditor's proof of claim against the debtor, and that this constitutes a conceivable impact on the estate for purposes of jurisdiction. [*Id.*, pp. 42-43].

To this, the Ward's counsel replied:

> Well, it's -- since it is a single claim against a single debtor, I think it is distinguishable from all the cases in which the courts have held that claims against guarantors are related. But I don't -- I don't have a tremendous level of confidence in that point. I'm just saying that it is improperly removed –

To which, the Bankruptcy Court replied:

> THE COURT: But the mere fact that you don't have confidence in the proposition that the claims have no effect on the estate tells me that they have at least a conceivable impact on the estate.

> [*Id*., p.43, lines 21-24].

In its ruling, the Bankruptcy Court noted that in addressing the Motion to Abstain, it must consider whether it has jurisdiction over the First Adversary, as abstention only applies when the Court has jurisdiction. [*Id*., p. 63, lines 2-8]. The Bankruptcy Court recognized that this required it to determine whether the First Adversary is at least related to the bankruptcy, and that under Fifth Circuit jurisprudence the usual articulation for this test is whether the outcome of that proceeding could conceivably have any effect on the estate. [*Id*., p. 69, lines 4-11, 12-25]. The Court concluded that "In this case, the State Court lawsuit contains claims that are, at a minimum, related to the bankruptcy." [*Id*., p. 70, lines 7-8). The Bankruptcy Court noted that the claim between Cross Keys against the guarantors, Mr. and Mrs. Ward, involved the enforcement of continuing guaranties and a recognition of a first priority security interest in collateral pledged by one of the guarantors, Mr. Ward. The Bankruptcy Court found that these claims, specifically, were related to the Bankruptcy Case because the outcome of these proceedings conceivably affects the estate. "If Cross Keys Bank collects from the guarantor, that means it is

required to reduce its proof of claim filed against the debtor. That's the conceivable impact." [*Id.*, p. 75, lines 20-25; p. 76, lines 1-5].

On September 15, 2020, the Wards filed a Motion for New Trial regarding the Order Denying Motion to Abstain and the Order Denying Motion to Remand and set the matter for hearing on November 12, 2020.  In the memorandum, the Wards asserted "A judgment against Ward would have an effect on the administration of the estate and estate itself only if there were other creditors." [*Id.*, p. 7]. In their memo, the Wards relied on the continued failure of the Debtor to file Schedules to support their argument, and assumed only one proof of claim, that of Cross Keys, would ever be filed.

Based on the Debtor's failure and refusal to file Schedules and a SOFA, on September 22, 2020, pursuant to FRBP 1007(k), the Bankruptcy Court ordered Cross Keys to prepare and file inter alia the statements and schedules described in FRBP1007(b)(1)(A), (C), and (D), within thirty-five days. [*Id.*, pp. 16-18].

On October 27, 2020, Cross Keys filed the Debtor's Schedules and SOFA pursuant to the order of the Bankruptcy Court. [Doc. No. 6-3, p.155-246]. These were prepared based upon the Debtor's own records, which Debtor had provided to Cross Keys and that were seized before the Bankruptcy Case was filed. [Doc. No. 6-12, p. 58].

Included in the Debtor's Schedule A\B were claims against Ronnie Ward and K and R Automotive, LLC, for at least $142,763.92. [Doc. No. 6-3, p. 161]. The Schedules also include claims against Ronnie Ward and other of his companies on the basis that they are alter egos of the Debtor, and those claims are property of the the Debtor's bankruptcy estate. *See e.g. Matter of S.I. Acquisition, Inc.*, 817 F.2d. 1142 (5th Cir. 1987). Debtors' Schedule E\F lists seven unsecured creditors, [*Id.*, at p.171-172],

including Homeland; Keith Albritton; Cross Keys; Ronnie Ward; RW Olds Buick GMC Truck Toyota; and others. *Id*. Debtor's Schedule H lists Ronnie Ward and Sharon Ward as "Codebtors."

In response to SOFA question 4, requesting a list of payments or transfers within the year prior to bankruptcy on debts owed to an insider or guaranteed by an insider, a transfer to Ronnie Ward, a 75% member, registered agent and manager of Debtor, in the amount of $142,763.92 was listed, and the reasons for payment were stated to be "misappropriated or diverted the funds and or caused the funds to be misappropriated or diverted from the Debtor and CKB." [*Id*., p. 179].

In its ruling on the Motion for New Trial, the Bankruptcy Court made several findings, including the following: (1) the Debtor was owned approximately 75% by Ronnie Ward, and is controlled by Ronnie Ward; (2) the Debtor had a statutory duty to file Statements and Schedules in the Bankruptcy Case; (3) the Debtor failed to comply with those duties; (4) the Debtor and Wards had no interest in ensuring schedules and statements were filed in the Bankruptcy Case, (5) the SOFA and Schedules filed by Cross Keys in compliance with an order from the court clearly show that the Debtor has several other creditors other than Cross Keys, and that (6) the Wards have not challenged the accuracy of the Statements and Schedules. [*Id*., pp. 67-68]. The Court continued:

> As the Wards themselves explained in their brief supporting a motion for new trial, a judgment against the Wards would have an effect on the administration of the estate and the estate itself if there were other creditors. Well, the record proves that the debtor has other creditors. The Court was thus correct when it found that it had at least related-to jurisdiction over the removed state court lawsuit and this proceeding is not subject to mandatory or permissive abstention or remand.
>
> The outcome of this proceeding, as the Wards seem to admit, could conceivably have an effect on the estate being administered in bankruptcy.

[*Id*., pp.67-68].

11

The Bankruptcy Court entered an order denying the Motion for New Trial on November 12, 2020. [D.E. 6-9, p.327-328]. ("Order Denying the Motion for New Trial").

This Court denied the Wards' unauthorized attempt to take an interlocutory appeal from the Order Denying the Motion for New Trial, the Order Denying Motion to Abstain and the Order Denying Motion to Remand. See Dist. Ct. Case No. 20-1511, D.E. 33 and 34.

Since the order denying the Motion for New Trial, two additional creditors, the Louisiana Department of Revenue and Caldwell Bank, have filed proofs of claim, and under well-established law, these are considered prima facie valid. [See Doc. No. 6-5, pp.80-83, .88-95; FRBP3001(f);11 U.S.C. § 502 (a)].

Following the Order Denying Motion to Abstain and the Order Denying Motion to Remand, the Bankruptcy Court entered a scheduling order, then amended it, and adjudicated the First Adversary pursuant to the timelines in it. [Doc. No. 6-8, pp. 328-331 and Doc. No. 6-12, pp.32-37].

Certain pleadings were amended, including the Wards' Answer to Cross Keys' Amended Petition. See e.g., D.E. 6-9, p.17-18; D.E. 6-9, p.19-24; and D.E. 6-9, p.329-330. However, while FRBP 7012(b) requires that any responsive pleading in an adversary "include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court," the Wards did not include any such statement in their amended answer. [Doc. No. 6-9, pp.19-24].

All alleged claims against Blount were dismissed pursuant to a motion under Federal Rule of Civil Procedure 12(b)(6), made applicable herein by FRBP 7012 [Doc. No. 6-9, p.321-323], and that dismissal was incorporated into the Final Judgment. [Doc. No. 6-15, pp. 91-96]

On February 24, 2021, Cross Keys filed a motion for partial summary judgment against the Debtor and various guarantors, including the Wards. While the Wards cited ongoing appeals, which they alleged raised issues of jurisdiction as justification for a motion to continue the hearing on this motion for summary judgment, they failed to brief any jurisdictional argument in their written memorandum in opposition to Cross Keys' motion for partial summary judgment, or insert any objection as to entry of a final judgment. [Doc. No. 6-13, pp.1-461]. Except for post-petition attorneys' fees, which Cross Keys later conditionally waived, the Bankruptcy Court entered relief as prayed for by Cross Keys in its order and memorandum ruling on March 24, 2021. [Doc. No. 6-14, pp.126-153; Doc. No. 6-14, pp.154-157]. As part of its ruling, the Bankruptcy Court again reviewed whether it had jurisdiction over each of the claims of Cross Keys against the Wards under 28 U.S.C. § 1334(b) and confirmed that it did. [Doc. No. 6-14, p.127-128].

On February 26, 2021, two days after Cross Keys filed its partial motion for summary judgment against the Wards and other defendants in the First Adversary, the Wards filed a Motion to Dismiss ("Motion to Dismiss") and an accompanying memorandum in the Bankruptcy Case on February 26, 2021. [Doc. No. 6-4, pp.104-109]. Here, the Wards attempted to raise the argument that a Sheriff's Bill of Sale supported their argument that "the liquidation of Karcredit" was complete before the Bankruptcy Case was filed, and that this eliminated "any chance of a meaningful bankruptcy," and thus, allegedly, the Bankruptcy Court had to conclude the Bankruptcy Case was filed in bad faith.

However, the Wards never presented this argument to the Bankruptcy Court at a hearing; thus, the Bankruptcy Court never ruled on the merits of this argument. Instead, the Bankruptcy Court denied the motion with prejudice by order on March 9, 2021, without a hearing, as an abuse of process, when the Wards failed multiple times to comply with relevant local rules and court

13

orders in their attempted prosecution of the motion [Doc. No. 6-4, pp.139-141 ("Order Denying Motion to Dismiss Bankruptcy")]. The Wards filed an appeal of this decision, which this Court rejected as an unauthorized interlocutory appeal. [Dist. Ct. Case No. 21-618, D.E. 15 and 16].

Caldwell Bank filed a motion for partial summary judgment against defendants Ward Chevrolet-Olds, Inc. ("Ward Chevy") and Ronnie Ward, both represented by Mr. Rountree, on November 20, 2020. [Doc. No. 6-9, pp.346-348]. Both Ward Chevy and Ronnie Ward elected to resolve this motion for partial summary judgment by agreeing to the entry of a consent judgment, which counsel for all parties signed, by the Bankruptcy Court on January 8, 2021. [Doc. No. 6-12, pp.152-155].

On April 28, 2021, Cross Keys and Caldwell filed a joint motion for entry of a consent judgment determining the rank and priority of their security interests as to the Homeland Stock. [Doc. No. 6-14, pp. 292-297]. The Wards did not file any opposition to this motion. [Doc. No. 6-6, pp.1-28]. Cross Keys and Caldwell also filed a joint motion for partial summary judgment to inter alia secure a judgment in favor of Caldwell Bank against Homeland, [Doc. No. 6-14, pp. 301-589], and the Wards withdrew their opposition to this motion at the hearing on it. [Doc. No. 6-8, p.22].

On June 1, 2021, the Bankruptcy Court issued a Notice and Order Setting Hearing, pursuant to FRBP 7016(b), on the issue of whether all parties expressly or impliedly consented to entry of final orders or judgments by the Bankruptcy Court. If they did, the court stated it would "hear and determine the proceeding" and enter a final judgment upon disposition of the First Adversary. [Doc. No. 6-15, pp.77-80]. The hearing was held on June 2, 2021. An order was entered thereafter stating that for the reasons in an accompanying memorandum ruling, the Bankruptcy Court would

enter a final judgment upon disposition of the First Adversary, under the authority of 28 U.S.C. § 157 and FRBP 7016(b)(1). [Doc. No. 6-15, pp.89-90].

Thereafter, the Bankruptcy Court entered the "Final Judgment" in the First Adversary, on June 7, 2021. [Doc. No. 6-15, pp. 91-96].  Pertinent to this appeal, the Final Judgment included an award in favor of Cross Keys against Ronnie D. Ward, Sharon D. Ward, and other parties in the amount of $3,054,122.18 plus interest. [*Id.*]

Ronnie Ward and Sharon Ward filed an appeal of the Final Judgment on June 11, 2021. [Doc. No. 6-15, pp.104-110].

## II.    LAW AND ANALYSIS

### A.    Standard of Review

"The Fifth Circuit has consistently held that the standard of review applicable to bankruptcy appeals in a district court is the same as the standard applied by a Court of Appeals to a district court proceeding." *Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577, 586 (E.D. La. 2008); *AT&T Univ. Car Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 402 (5th Cir. 2001) (we apply the same standard of review to the analysis of the bankruptcy court's order as did the district court). Under those standards, "the bankruptcy court's factual findings are reviewed for clear error; its legal conclusions and findings on mixed questions of fact and law are reviewed *de novo*." *Id*.

### B.    Procedural Objections

Cross Keys first objects to the appeal, and to Appellants' brief, on numerous procedural grounds.  Cross Keys contends that Appellants have inadequately briefed their appeal, and that this is sufficient reason for this Court to conclude that Appellants have waived or abandoned all arguments on appeal. *See generally, Friou v. Phillips Petroleum Co*., 948 F.2d 972, 975

(5th Cir. 1991); *Bailey v. U.S. Bank*, 620 Fed. Appx. 361, 362 (5thCir. 2015); *Ward v. Cross Keys Bank*, Dist. Ct. Case No. 20-1467, D.E. 20 (W.D. La. 4/29/21). Cross Keys asserts that, in violation of FRBP 8014(a) (6) and (8), Appellants have failed to include any citations to the appellate record in their brief. The Fifth Circuit has noted that failure to include citations to the record is inadequate briefing and, alone, justifies a finding that the appellant has abandoned any issues on appeal. See *Clark*, 407 Fed. Appx. at 795; *Anderson*, 67 Fed. Appx. 243; *Bailey v. U.S. Bank*, 620 Fed. Appx. 361, 362 (5th Cir. 2015); *see also McCoy v. United States*, 2019 WL 1084211, at *3 (S.D. Tx. 3/7/2019) (noting "Bankruptcy Rule 8014(a), which governs the presentation of appellants' briefs in bankruptcy appeals, is not only a technical or aesthetic provision, but also has a substantive function—that of providing the other parties and the [C]ourt with some indication of which flaws in the appealed order or decision motivate the appeal" and that failure to comply with Rule 8014 is sufficient grounds to deny the appeal without more) (*citing In re Stotler and Co*., 166 B.R. 114, 117 (N.D. Ill. 1994)).

Cross Keys further contends that Appellants' Brief fails to comply with FRBP 8014(a)(6), which requires a "statement of the case" which "set[s] out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record." Cross Keys asserts that Appellants' "Statement of the Case" does not comply with this requirement.

Appellants do not directly address these objections, but instead accuse Cross Keys of "convoluted quibbling over meaningless issues."  [Doc. No. 17, p. 4].

The Court notes that Appellants are establishing a pattern of disregarding the Bankruptcy Rules in their appeals in this case, due either to recalcitrance or to a lack of understanding.  See *Ward v. Cross Keys Bank*, No. 3:20-cv-01467, 2021 WL 1724868 (W.D. La. April 29, 2021).

Considering these procedural deficiencies, the Appeal should be dismissed. Nevertheless, the Court will address what it construes to be the merits of the Appeal.

### C.      The Merits

Appellants make four arguments on appeal:

(1)      There is no subject matter jurisdiction for Cross Keys' claim against the Wards;

(2)      The Court should remand the claim against the Wards and require Cross Keys to pay costs and attorney fees;

(3)      The bankruptcy was filed in bad faith to obtain an advantage in litigation; and

(4)      The authority of the Bankruptcy Court was limited to proposed Findings of Fact and Conclusions of Law.

The Court will first discuss the subject matter jurisdiction argument, as a determination of it could affect the second and third arguments.

### 1.      Subject Matter Jurisdiction

Appellants submit that the Bankruptcy Court does not have subject matter jurisdiction over Cross Keys' claims against them in the First Adversary.  They contend that Cross Keys initiated the proceedings in Bankruptcy Court by filing a petition to liquidate an already liquidated debtor. Appellants assert this is because Karcredit was also a defendant in Ouachita Parish suit number 19-3153, which resulted in the liquidation of all of its assets through a Sheriff's Bill of Sale dated July 15, 2020. R-30681-#23-2. Two days after the sheriff's bill of sale, Cross Keys filed the petition for involuntary bankruptcy against the "empty shell" of Karcredit, in a successful bad-faith attempt to get a litigation advantage, according to Appellants.

Appellants state that the issue is whether the claim against Ronnie Ward removed pursuant to 18 U.S.C. § 1452 falls with the subject matter grant of 18 U.S.C. § 1334(b), which provides:

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. (emphasis added).

28 U.S.C. § 1452 provides in part:

(a) A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Appellants contend that the only conceivable basis for federal jurisdiction over the claim asserted by Cross Keys against Ronnie Ward and Sharon Ward in the First Adversary is the contention that it is "related to" a case under Title 11, i.e., the Karcredit Bankruptcy. A claim cannot fall within the "related to" jurisdictional grant, however, unless the claim is "capable of affecting the bankruptcy estate." *In re Bass*, 171 F.3d 1016, 1023 (5th Cir.1999). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

Appellants argue this presupposes the existence of an estate to be administered, the absence of which is a distinguishing factor of this case, because Cross Keys purchased all of Karcredit's assets at a sheriff's sale just before filing the petition for involuntary bankruptcy. Thus, there was nothing for the Bankruptcy Court to administer, according to Appellants, and there is no bankruptcy estate, and Cross Keys' success or failure in its effort to recover money from Ronnie Ward in no way alters or affects rights, liabilities, options, or freedom of action of Karcredit.

Appellants therefore conclude that the Bankruptcy Court does not have subject matter jurisdiction over Cross Keys' claims against them in the First Adversary.

Cross Keys responds, first, that Appellants' argument is based entirely on their interpretation of the Sheriff's Bill of Sale, and Appellants took no steps to develop an evidentiary, factual record of these allegations in the Bankruptcy Court. Appellants never pressed or raised their argument about the Sheriff's Bill of Sale before the Bankruptcy Court and thus it never ruled on it, as no hearing was ever held on these contentions. Consequently, this Court is prohibited from considering that argument, on appeal, in the first instance, according to Cross Keys.

This Court agrees that Appellants failed to develop an evidentiary, factual record with regard to the Sheriff's Bill of Sale.  This Court is not sitting as a trial court, but as an appellate court. Appellants attempted to raise this argument before the Bankruptcy Court in their Motion to Dismiss in the Bankruptcy Case, but the Bankruptcy Court did not consider the merits of the motion. Rather, it dismissed the motion, based on abuse of process, due to the failure of counsel for the Wards to comply with local rules and court orders in attempting to prosecute the motion. Appellants also failed to raise this argument during the hearings on the Motion to Abstain, Motion to Remand, and Motion for New Trial.

This Court further finds that the existing record and uncontested factual findings of the Bankruptcy Court do not support Appellants' contentions. The Schedules and SOFA filed in the Bankruptcy Case list assets and multiple creditors, like Homeland, which are not guarantors of the debt owed under the Note, and now Final Judgment, to Cross Keys. (D.E. 6-3, p.155-246). The Bankruptcy Court found as part of its ruling on the Motion for New Trial that the Wards never objected to or formally challenged the Schedules or SOFA, that the description of assets and liabilities therein stands, and that those Schedules establish the Debtor has multiple creditors. (D.E. 6-12, p.67-68).

This Court finds that the Bankruptcy Court had subject matter jurisdiction. As indicated above, during the hearing on the Motion to Abstain and Motion to Remand, counsel for the Wards admitted that at the time the First Adversary was removed to the District Court, it was eminently conceivable that the Trustee has Chapter 5 Actions, including possible avoidance actions against Ronnie Ward or a non-insider. (D.E. 6-9, p.36, lines 21-25; p.37, lines 1-3; p.51, lines 1-11).

This was more than just an admission by counsel. The Schedules and SOFA filed by Cross Keys, based on Karcredit's records, also lists claims (assets) against Ronnie Ward based on the fact that within the year prior to the filing of the Bankruptcy Case, Ronnie Ward misappropriated and or diverted funds or caused funds to be misappropriated or diverted from the Debtor and Cross Keys, in an amount totaling at least $142,763.92. (D.E. 6-3, p.161; D.E. 6-3, p.179).

The Bankruptcy Court found as part of its ruling on the Motion for New Trial that the Wards did not object to or formally challenge the Schedules or SOFA. (D.E. 6-12, p.67-68). In an affidavit Cross Keys submitted in opposition to the Motion to Abstain, Cross Keys explained that after it exercised its rights to collect amounts due under certain Karcredit contracts, it discovered Ronnie Ward had opened a new account at BancorpSouth Bank in Karcredit's name and diverted at least $140,241.05 in payments under the Karcredit contracts, from June 19, 2019, through at least February 8, 2020, that constituted CKB's collateral, to that account. (D.E. 6-8, p.176-188). Among other possible Chapter 5 Actions, under 11 U.S.C. § 548(a)(1), the Trustee may avoid any transfer to or for the benefit of an insider, like Ronnie Ward that occurred within 2 years before the date of the filing of the Bankruptcy Case, if certain conditions outlined therein are satisfied. And, under 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by any

creditor - like Cross Keys – which holds allowed unsecured claim in the Bankruptcy Case. See also La. C.C. 2036 (the Louisiana revocatory action).

Appellants do not dispute that in a chapter 7 case, only a trustee has standing to pursue chapter 5 avoidance actions and other estate causes of action. *See In re Cooper*, 405 B.R. 801, 807 (Bankr. N.D. Tx. 2009). Furthermore, any property recovered by the trustee in avoidance actions and pursuant to section 544(b) becomes estate property and is divided pro rata among all general unsecured creditors. *In re Moore*, 608 F.3d 253, 260 (5thCir. 2010); *Matter of Texas General Petroleum Corp.*, 52 F.3d 1330, 1336 (5thCir. 1995).

Cross Key's recovery against the Wards and the collateral securing Ronnie Ward's guaranty obligation, including the Homeland Stock owned by Ronnie Ward and the Policy, all facilitated by the First Adversary, could reduce the amount owed by the Debtor to Cross Keys on account of its proof of claim. In turn, at the time of removal of the First Adversary, this allowed for the possibility that the other creditors listed in the uncontested Schedules and SOFA, and the other creditors who filed proofs of claim, including the Louisiana Department of Revenue and Caldwell Bank (and whose proofs of claim are deemed prima facie valid), would receive a greater distribution of proceeds from the bankruptcy estate.

This constitutes the requisite conceivable effect on the Debtor's rights, liabilities, options, or freedom of action and impact upon the handling and administration of the bankruptcy estate to invoke related to jurisdiction under 28 U.S.C. § 1334.

Accordingly, the Court concludes that the Bankruptcy Court had subject matter jurisdiction on the First Adversary.

### 2.    Remand

Having concluded that the Bankruptcy Court had subject matter jurisdiction, the Court need not consider Appellant's contention that the Court should remand the claim against the Wards and require Cross Keys to pay costs and attorney fees.

### 3.    Bad Faith

For the reasons set forth above, the Court finds that Appellants have failed to establish that Cross Keys filed the bankruptcy in bad faith to obtain an advantage in litigation.

### 4.    Bankruptcy Court Exceeded its Authority

Finally, Appellants argue that the authority of the Bankruptcy Court was limited to proposed Findings of Fact and Conclusions of Law.

The Fifth Circuit has explained that "a bankruptcy court may enter final judgment only if the court has both statutory and constitutional authority to do so." *See In re Galaz*, 765 F.3d 426, 431 (5th Cir. 2014) (*citing Stern v. Marshall*, ––– U.S. ––––, 131 S.Ct. 2594, 2608 (2011)). "A bankruptcy court's statutory authority derives from 28 U.S.C. § 157(b)(1), which designates matters as either "core" or "non-core". *Id*. "A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Id*. See also *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96-97 (5thCir. 1987). Matters which do not meet this test are "non-core" proceedings. *Id*.

A bankruptcy court may hear, determine, and enter final orders and judgment on non-core matters with the consent of all parties to the proceeding. 28 U.S.C. § 157(c)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015). Implied consent will suffice. According to the Supreme Court, "nothing in the Constitution requires that consent to adjudication by a

bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent." *Wellness*, 135 S. Ct. at 1947–48.

The Federal Rules of Bankruptcy Procedure require a bankruptcy court to "decide ... whether: (1) to hear and determine the proceeding; (2) to hear the proceeding and issue proposed findings of fact and conclusions of law; or (3) to take some other action." Fed. R. Bankr. P. 7016(b). The Rule authorizes the court to decide this issue on its own motion.

> According to the Advisory Committee Notes for the 2016 amendments:
>
> > This rule is amended to create a new subdivision (b) that provides for the bankruptcy court to enter final orders and judgment, issue proposed findings and conclusions, or take some other action in a proceeding. The rule leaves the decision as to the appropriate course of proceedings to the bankruptcy court. The court's decision will be informed by the parties' statements, as required under Rules 7008(a), 7012(b), and 9027(a) and (e), regarding consent to the entry of final orders and judgment. If the bankruptcy court chooses to issue proposed findings of fact and conclusions of law, Rule 9033 applies.

Fed. R. Bankr. P. 7016, Advisory Committee Notes.

The Bankruptcy Court ruled that Cross Keys' claims against the Wards, the claims for enforcement of the guaranty agreements, and for recognition of first priority security interests in collateral pledged by Ronnie Ward, are all "non-core". [Doc. No. 6-14, p.129; Doc. No. 6-9, p.75].

"As [to] 'non-core' proceedings, [as long as they are within the 'related to' jurisdictional grant of 28 U.S.C. § 1334], 28 U.S.C. § 157(c) authorizes a bankruptcy court either to 'submit proposed findings of fact and conclusions of law to the district court,' which are reviewed de novo, or to enter final judgment with the parties' consent." *In re Galaz*, 765 F.3d at 431 (*citing Executive Benefits Ins. Agency v. Arkinson*, 134 S.Ct. 2165, 2172 (2014)).

Appellants argue that they did not consent to the entry of judgment because they disputed that the Bankruptcy Court ever had subject matter jurisdiction in the first place [Doc. No. 17, pp. 11, 12].  As indicated above, this Court has found that the Bankruptcy Court did have subject matter jurisdiction.

The Bankruptcy Court issued a memorandum ruling addressing the Wards' consent to final judgment.  The Bankruptcy Court stated in part:

> In an adversary proceeding involving a non-core matter, to determine whether the court can "hear and determine the proceeding," the court is tasked with the responsibility of determining whether all parties expressly or impliedly consented to entry of judgment by the bankruptcy court. In this case, the court can discharge this duty with relative ease.
>
> Three parties – CKB [Cross Keys], Caldwell Bank and Ellis Blount - expressly consented to entry of judgment by this court. The focus, therefore, is on the remaining parties because they were required to, but did not, file a statement pursuant to Fed. R. Bankr. P. 9027(e)(3). A party's failure to file the required statement, however, does not necessarily mean that the party consents to entry of final orders by this court. To make that determination, the court examines the totality of the circumstances.
>         . . .
>
> As for Ronnie D. Ward and Ward Chevrolet-Olds, Inc., they expressly consented to entry of a money judgment (docket no. 144) against them in favor of Caldwell Bank for $442,348.15, plus interest. They were clearly aware of the need for consent and their right to refuse it, yet they filed a pleading stating that: "The parties resolved their differences and agreed to the entry of a consent judgment." (docket no. 140, ¶ 2) (emphasis added). There is no question that they knowingly and voluntarily consented to entry of judgment by this court. *In re Cella III, LLC*, No. AP 19-01145, 2020 WL 7753277, at *3 (Bankr. E.D. La. Dec. 29, 2020) (defendant impliedly consented to entry of judgment by the bankruptcy court "when it requested Judge Brown to enter final judgment on four motions for summary judgment.").
>
> That leaves Sharon D. Ward. She did not file the statement required by Fed. R. Bankr. P. 9027(e)(3), nor did she include such a statement in her Amended Answer (docket no. 60) as required by Fed. R.

> Bankr. P. 7012(b). However, she used the same attorney as her husband, Ronnie Ward, who requested entry of the consent judgment. When her attorney requested entry of the consent judgment, he knew this court could not enter it without consent of all parties, including Sharon Ward. 28 U.S.C. § 157(c)(2). Sharon Ward is bound by the actions of her lawyer. Her consent is implied.

[Doc. No. 6-15, pp. 81 *et seq.*]

The Court finds no clear error in the Bankruptcy Court's ruling.  The Court notes that, six days after removal of the First Adversary, the Wards received a copy of the Order Regarding Procedural Requirements on a Removed Action from the Bankruptcy Court, which notified all parties to file a statement pursuant to FRBP 9027(e)(3) within fourteen days of removal. See D.E. 6-7, p.1; D.E. 6-7, p.533-535. Pursuant to FRBP 9027, the statement must be signed pursuant to FRBP 9011 and state whether the party does or does not consent to entry of final orders or judgment by the Bankruptcy Court. Neither of the Wards filed a FRBP 9027(e)(3) statement.

The Court further notes that the Wards sought and received leave to amend their answer to CKB's Amended Petition in the First Adversary and filed an amended answer on November 16, 2020. [Doc. No. 6-9, p.333-336]. Under FRBP 7012(b), a responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court. The Wards did not include any such statement in their amended answer.

Thus, it is clear that Appellants had several opportunities to state that they did not consent to entry of final orders or judgments, yet they elected not to take advantage of those opportunities.

As indicated above, the 2016 Advisory Committee Notes to FRBP 7016(b) provide that the court's decision under that rule regarding consent to entry of final orders and judgment will be informed by the parties' statements required under FRBP 9027(a) and (e) and FRBP 7012(b).

Additionally, when Caldwell Bank filed its first partial motion for summary judgment against Ronnie Ward in the First Adversary, D.E. 6-9, p.346-348, Ronnie Ward and his company

submitted a consent judgment with Caldwell Bank and requested that the Bankruptcy Court enter it, which it did. [Doc. No. 6-12, p.152-155]. The consent judgment does not preserve any objection to jurisdiction, or as to finality of the judgment, but simply grants judgment in favor of Caldwell against Ronnie Ward and Ward Chevrolet. [Id.]. Per the consent judgment: "Ward Chevy and Ward have agreed to the entry of this Consent Judgment, which reflects the agreement of the parties." *Id.* at 2; *accord Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (wherein the Fifth Circuit held a factor weighing in favor of finding consent to entry of final judgment is whether the party agreed to entry of relief in the court without expressing any limitations on its consent). No party, including Sharon Ward, objected to the entry of the consent judgment. *Id*.

All of these facts support the finding of the Bankruptcy Court that the Wards consented to the Bankruptcy Court's entry of a final judgment on Cross Keys' claims against them in the First Adversary.

## III.    CONCLUSION

For these reasons, the Court finds no error in the Bankruptcy Court's Order.  Accordingly, the Appeal filed by Ronnie Ward and Sharon Ward is **DENIED** and the Bankruptcy Court's Order is **AFFIRMED**.

Monroe, Louisiana, this 7th day of September, 2021.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**